UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
 :
WESLEY SOMMERVILLE, :
 :
                Plaintiff, : No. 16 CV 1988 (KAM)(LB)
 :
      v. :
 : **AMENDED COMPLAINT**
THE CITY OF NEW YORK, NYPD OFFICER :
ARTHUR GREEN, NYPD OFFICER CHRIS :
DABROWSKI, NYPD SERGEANT DANIEL : **JURY TRIAL DEMANDED**
GALLAGHER, MAURICE BROWN, MICHAEL :
CLARK, and BYRON DAVIS, :
 :
                Defendants. :
 :
------------------------------------------------------------X

      Plaintiff Wesley Sommerville, by and through his attorneys, for his Amended Complaint, states as follows:

**PRELIMINARY STATEMENT**

      1.      This is a civil rights action in which the plaintiff Wesley Sommerville ("Mr. Sommerville" or the "Plaintiff") seeks relief for the defendants' violations of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, by the United States Constitution, including its First, Fourth, Fifth and Fourteenth Amendments, and by the laws and the Constitution of the State of New York.  Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

      2.      On the morning of October 25, 2013, Mr. Sommerville was savagely attacked and beaten by three City of New York sanitation workers while delivering a dumpster in the vicinity of 1206 Bergen Street in Brooklyn.  When responding police officers learned fellow City workers were responsible for the attack, they pressured Plaintiff <u>not</u> to press criminal charges.

When Plaintiff insisted on pressing charges, the officers retaliated by illegally searching his truck, arresting Plaintiff without probable cause, detaining him overnight, and causing the Plaintiff—the victim who called for police and medical assistance in the first place—to be criminally charged with attempted assault in the third degree, menacing in the third degree, and harassment in the second degree.

3. As a result of defendants' actions, Plaintiff has suffered deprivations of the rights guaranteed to him under the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of New York; he has suffered physical, emotional and economic harm; he has also suffered harm to his reputation from a criminal prosecution that defendants knew or reasonably should have known was baseless.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343 because Plaintiff seeks redress for civil rights violations under 42 U.S.C. §§ 1983 and 1988.

5. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to Plaintiff's claims asserted herein occurred in Brooklyn, New York.

## PARTIES

7. At all relevant times to this action, Plaintiff Wesley Sommerville was a resident of Richmond County, New York. He is currently a resident of Hennepin County, Minnesota.

8. Defendant City of New York is and was at all relevant times herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a sanitation department and a police department, each acting, respectively, as its agent in the areas of garbage collection and law enforcement, and for which the City of New York is ultimately responsible. Defendant City of New York assumes the risks incidental to the maintenance of a sanitation department and a police force, and the employment of sanitation workers and police officers. Defendant City of New York was at all times relevant herein the public employer of Defendants Officer Arthur Green, of the New York City Police Department ("NYPD"), NYPD Officer Chris Dabrowski, NYPD Sergeant Daniel Gallagher (collectively, the "Police Defendants"). Defendant City of New York was at all times relevant herein the public employer of Department of Sanitation ("DSNY") workers Maurice Brown, Michael Clark, and Byron Davis (collectively, the "Sanitation Defendants").

9. Defendants Brown, Clark, and Davis are and were at all times relevant herein duly appointed and acting employees, servants, and agents of the DSNY, a municipal agency of Defendant City of New York. At all relevant times herein, the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the DSNY, in the course and scope of their duties and functions as agents, servants, and employees of Defendant City of New York, were acting for, and on behalf of, and with the power and authority vested in them by the City of New York and the New York City Department of Sanitation, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity.

10. Defendants NYPD Officer Arthur Green, NYPD Officer Chris Dabrowski, and NYPD Sergeant Daniel Gallagher are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the New York City Police Department, a municipal agency of Defendant City of New York. At all relevant times herein, the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the New York City Police Department, in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant City of New York, were acting for, and on behalf of, and with the power and authority vested in them by the City of New York and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity. By the conduct, acts, and omissions complained of herein, Defendants Green, Dabrowski, and Gallagher violated clearly established constitutional standards under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution of which a reasonable police officer under the circumstances would have known.

11. At all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## STATEMENT OF FACTS

12. During the morning hours of October 25, 2013, Wesley Sommerville was delivering a dumpster to a customer located at or around 1206 Bergen Street in Brooklyn, New York. Mr. Sommerville parked his "roll-off" truck—a massive truck for which a single dumpster bin is fitted to roll on and off the truck bed—at his delivery site and began the

extremely dangerous process of rolling the heavy dumpster off the rear of his truck bed. At the same time a City of New York garbage collection truck operated by Defendant Brown arrived at the site and stopped in a location far too close to Mr. Sommerville's vehicle for safe operation. Recognizing the potential danger, Plaintiff quickly stopped the "roll-off" process, a hazard in its own right for an operator like Mr. Sommerville and those working nearby.

13. After successfully stopping the "roll off," Mr. Sommerville approached Defendant Brown to request that he move the City collection truck due to the dangerous situation he created by its stop position. Defendant Brown dismissed Plaintiff's request and an argument ensued between the two men. Before Plaintiff could react, the argument turned physical when Defendant Brown punched Mr. Sommerville in the face and wrestled him to the ground. Defendants Clark and Davis joined the attack by stomping, kicking and punching Plaintiff while he was pinned to the ground.

14. The beating continued until a female sanitation worker, who arrived on a second collection truck, and a porter for the building at 1206 Bergen Street, pulled the Sanitation Defendants off of the Plaintiff. The Sanitation Defendants then returned to their trucks and departed up the street as if the incident had never occurred.

15. Visibly shaken and injured, Plaintiff was helped to his feet and immediately placed a call to 911 requesting police assistance and medical attention. He reported to the 911 dispatcher, in sum and substance, that he had been attacked by three sanitation workers and provided his name and current location.

16. Minutes later NYPD Officers Green and Dabrowski arrived on the scene in a marked patrol car. They found Plaintiff with bloodied knees and apparent swelling on his face, head and beneath his eye. Plaintiff recounted the attack to Officer Green in great detail. The

5

porter who witnessed the attack and actually helped pull the Sanitation Defendants off of Plaintiff corroborated Plaintiff's version of events.

17. Officer Green, however, expressed skepticism about Mr. Sommerville's version of events. In a demonstration of preferential treatment for his fellow City employees over the Plaintiff, Officer Green tried to persuade Mr. Sommerville <u>not</u> to press charges against the Sanitation Defendants. Plaintiff—the injured victim who called 911—however, persisted in his desire to press criminal charges.

18. A third officer, Sergeant Gallagher, soon arrived on the scene in a marked police car. Sergeant Gallagher told Plaintiff that an officer would drive him up the street in the direction the Sanitation Defendants drove to see if Mr. Sommerville could identify the Sanitation Defendants.

19. Officer Green then placed Mr. Sommerville in the back of his patrol car. From his vantage point in the backseat, Mr. Sommerville was able to see certain of the Police Defendants begin to search his idled work truck. Locked in the patrol car, Mr. Sommerville objected to the search, because the Police Defendants had no reason to search the truck and, upon information and belief, did not have a warrant to search his work truck.

20. While the search of his truck continued, Mr. Sommerville was driven several blocks by Officer Green in the direction of the Sanitation Defendants. They eventually found the Sanitation Defendants and Mr. Sommerville was able to make an identification. Officer Green approached the Sanitation Defendants and spoke with them for approximately twenty to thirty minutes, while Mr. Sommerville remained locked in the backseat of the patrol car.

21. When the discussion with the Sanitation Defendants ended, Officer Green and Sergeant Gallagher sought again to persuade Plaintiff not to press charges against the Sanitation

6

Defendants. This time, however, they told the Plaintiff that if he wanted to press charges they would be required to arrest Plaintiff as well. Plaintiff was shocked: He was the victim and it was, or should have been, clear to an officer with proper training that he was not the perpetrator of the assault. Indeed, the porter who witnessed the attack told the officers that it was Mr. Sommerville who was attacked, not the other way around. Unwilling, however, to be intimidated by Sergeant Gallagher and Officer Green, Plaintiff insisted on pressing charges against the Sanitation Defendants, even if it meant that he too would be placed under arrest.

22. Plaintiff was then arrested, handcuffed and taken by ambulance to Interfaith Medical Center in Brooklyn, New York ("Interfaith") to treat his medical injuries. Upon information and belief, none of the Sanitation Defendants required medical attention.

23. NYPD Officer Dabrowski accompanied Plaintiff to Interfaith and remained with him while he received medical attention. Plaintiff was examined by medical professionals who, among other things, performed an x-ray of his knee, back and right hip, bandaged both of his bloodied knees, diagnosed facial swelling and contusions, and recommended pain medication. They also recommended an MRI of Plaintiff's knee and back. Mr. Sommerville remained handcuffed from the time he was placed in the ambulance through the duration of his medical treatment.

24. At one point during treatment, Plaintiff expressed to Officer Dabrowski, in sum and substance, that it was not fair that he had been arrested and that he committed no crime. Officer Dabrowski agreed that it was unfair and said, in sum and substance, that the police officers were simply doing their jobs. Despite this apparent acknowledgement that the Police Defendants lacked probable cause to arrest Mr. Sommerville, Officer Dabrowski did not take any steps to release him.

25. Upon discharge from Interfaith, Plaintiff was transported to the NYPD's 77th Precinct in Brooklyn, where he was held overnight in a jail cell. Mr. Sommerville did not see any of the Sanitation Defendants while he was being held at the 77th Precinct.

26. The following day, October 26, 2013, Plaintiff was arraigned on trumped up charges of (i) attempted assault in the third degree, (ii) menacing in the third degree, and (iii) harassment in the second degree in Kings County Criminal Court.

27. After his arraignment, Plaintiff was released by the court on his own recognizance.

28. Plaintiff's next court appearance took place several months later on January 27, 2014. At that appearance, all of the charges against Mr. Sommerville were dismissed.

29. Meanwhile, notwithstanding Mr. Sommerville's strongly held desire to press charges against the Sanitation Defendants for the attack, the Kings County District Attorney's Office repeatedly pressured him to abandon his allegations against the Sanitation Defendants. Plaintiff refused to give in and was led to believe by the Assistant District Attorney that the prosecutions against the Sanitation Defendants were moving forward. However, upon information and belief, the case in fact was not moving forward against the Sanitation Defendants, and at some point had been dismissed. Instead of notifying the Plaintiff, the Assistant District Attorney handling the case simply ceased communications. Plaintiff on numerous occasions contacted the Assistant District Attorney, but received no response. Indeed, to this date the District Attorney's Office, including the Victim Services Unit, has not notified Plaintiff—the victim—that the charges had been dropped against the Sanitation Defendants.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Excessive and Malicious Use of Force
### Against the Sanitation Defendants in Their Individual and Official Capacities

30. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 29 as if fully alleged herein.

31. The Sanitation Defendants, acting under color of law, unreasonably and maliciously applied force to Mr. Sommerville in violation of Mr. Sommerville's rights under the First and Fourteenth Amendments to the U.S. Constitution. The Sanitation Defendants attacked Plaintiff and wrestled him to the ground, with punches and kicks to his body and head. The Sanitation Defendants' sole purpose in applying force to Mr. Sommerville was to retaliate against him for objecting to the manner in which they operated a City collection vehicle and to inflict physical harm upon him.

32. As a result, Plaintiff was deprived of his First and Fourteenth Amendment rights, and suffered injuries to his face, head, right hip, back, and knees. Mr. Sommerville was treated in the hospital for his injuries and still suffers the effects of his injuries today.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – False Arrest and False Imprisonment
### Against the Police Defendants in Their Individual and Official Capacities

33. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 32 as if fully alleged herein.

34. The acts of the Police Defendants, under color of state law, in arresting Plaintiff in retaliation for his insistence on pressing charges against the Sanitation Defendants, were undertaken without lawful justification, taken with deliberate indifference to Plaintiff's rights, and were designed to, and did, cause specific harm, pain and suffering to the Plaintiff in violation

of his Constitutional rights as guaranteed by the First, Fifth and Fourteenth Amendments to the United States Constitution.

35. As a consequence of the Police Defendants' actions, Plaintiff has suffered violations of his due process rights under the First, Fifth and Fourteenth Amendments.

36. As a direct and proximate result of the Police Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Unlawful Search
### Against the Police Defendants in Their Individual and Official Capacities

37. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 36 as if fully alleged herein.

38. By their conduct, as described herein, and acting under color of state law to deprive the Plaintiff of his right to be free from unreasonable searches and seizures and arrest without reasonable suspicion or probable cause as required by the Fourth and Fourteenth Amendments, the Police Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

39. As a direct and proximate result of the Police Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Malicious Prosecution
### Against the Police Defendants in Their Individual and Official Capacities

40. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 39 as if fully alleged herein.

41. By their conduct, as described herein, and acting under color of state law, the Police Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for the violation of his constitutional right to be free from malicious prosecution under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

42. The Police Defendants' unlawful actions by providing false and/or misleading information to the Kings County District Attorney's Office, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights. The prosecution constituted a malicious prosecution in that there was no basis for the Plaintiff's arrest, yet the prosecution continued, until it was resolved in Plaintiff's favor in January 27, 2014.

43. As a direct and proximate result of the Police Defendants' unlawful actions, Plaintiff has suffered a loss of liberty and loss of privacy, and will continue to suffer, damages including, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Failure to Intervene**
**Against the Police Defendants in Their Individual and Official Capacities**

44. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 43 as if fully alleged herein.

45. The Police Defendants had a duty to intervene on behalf of Plaintiff to protect his constitutional rights from infringement by other law enforcement officers in the Police Defendants' presence.

46. The Police Defendants, acting under color of law, and with a realistic opportunity to intervene, failed to intervene to protect the constitutional rights of Plaintiff from being

violated, to wit, they failed to protect Plaintiff from being unjustifiably arrested and detained without probable cause, failed to protect him from being maliciously prosecuted, and failed to prevent the search without probable cause of Plaintiff's vehicle.

47. As a result, Plaintiff was unconstitutionally arrested, detained, prosecuted, and his vehicle searched, and was damaged thereby.

**SIXTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Municipal Liability**
**Against Defendant City of New York**
(*Monnell v. Dep't of Social Servs.*, **436 U.S. 658 (1977)**)

48. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 47 as if fully alleged herein.

49. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and over the NYPD and DSNY.

50. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

51. Upon information and belief, the actions of the Sanitation Defendants and the Police Defendants resulted from and were taken pursuant to the de facto policy, custom, or practice of the DSNY and/or NYPD of:

   a. in the case of the DSNY, unsafely operating DSNY collection trucks, including unnecessarily blocking traffic to the detriment of the residents of New York;

   b. in the case of the NYPD, making arrests absent probable cause to do so;

   c. in the case of the NYPD, initiating prosecutions absent probable cause to do so; and

   d. in the case of the NYPD, exercising favoritism towards fellow officers and fellow employees of Defendant City of New York, in this case the Sanitation Defendants, to the detriment of the residents of New York.

52. The violation of Plaintiff's rights in this fashion was not an isolated incident. For example, the NYPD and its officers frequently make arrests and initiate prosecutions without probable cause,[1] often, seemingly, to protect themselves and their colleagues.[2] The unsafe operation of DSNY collection trucks is also not uncommon.[3]

53. The City of New York's de facto policy, custom, or practice of false arrest, baseless prosecution, and unjust favoritism can be inferred from the regular pattern of such conduct. In the U.S. District Court for the Eastern District of New York alone, dozens of the victims of this system of municipal harassment await trial, and in just the first 10 months of 2016, the City has already been forced to settle at least 10 separate cases of false arrest and malicious prosecution:

   a. *Adegboye v. City of New York*, No. 15-CV-07303 (E.D.N.Y.)

   b. *Britton v. City of New York*, No. 15-CV-06710 (E.D.N.Y.)

   c. *Freeman v. City of New York*, No. 15-CV-06097 (E.D.N.Y.)

   d. *Green v. City of New York*, No. 15-CV-06041 (E.D.N.Y.)

---

[1] *See* Christina Carrega-Woodby, *Four Busted in Brooklyn for Allegedly Trying to Rob Undercover Cop – Yet Surveillance Video Tells Different Story*, N.Y. DAILY NEWS, Jan. 13, 2016, http://www.nydailynews.com/new-york/brooklyn/video-contradicts-claims-men-robbed-brooklyn-article-1.2494825 (describing NYPD officer's arrest of four individuals in Brooklyn without probable cause); Emma Whitford, *Surveillance Footage Seems to Contradict Cop's Claim That He Was Threatened at Knifepoint*, GOTHAMIST, Jan. 13, 2016, http://gothamist.com/2016/01/13/surveillance_footage_vs_cop.php (describing unfounded charges arising out of same incident).

[2] *See* Winnie Hu, *New York Police Officer Is Convicted of Lying About Photographer's Arrest*, N.Y. TIMES, Oct. 15, 2015, http://www.nytimes.com/2015/10/16/nyregion/new-york-police-officer-is-convicted-of-lying-about-photographers-arrest.html (describing NYPD officer's conviction arising out of the false arrest of a photographer documenting stop-and-frisk tactics); Brendan O'Connor, *NYPD Officer Charged With Unlawful Arrest, Illegal Search, and Falsifying Documents*, GAWKER, Dec. 22, 2015, http://gawker.com/nypd-officer-charged-with-unlawful-arrest-illegal-sear-1749382181 (describing the indictment of an NYPD officer who arrested a person after that person sought to videotape the officer's illegal search of another individual, and describing false statements in arrest report).

[3] *E.g.*, Thomas Tracy, *Donald Trump-loving NYC Sanitation workers fight with driver*, N.Y. DAILY NEWS, Mar. 17, 2016, http://www.nydailynews.com/new-york/donald-trump-loving-nyc-sanitation-workers-fight-driver-article-1.2568005 ("[S]anitation workers [were] caught on video . . . screaming at a motorist in Brooklyn they were blocking, claiming that the man behind the wheel should be deported."); Jamie Schram, *Sanitation truck driver assaults cabby*, N.Y. POST, March 3, 2014, http://nypost.com/2014/03/03/sanitation-truck-driver-assaults-cabby/ (describing taxi driver punched in the mouth during an argument over blocking the roadway with a garbage truck).

  e. *Jack v. City of New York*, No. 15-CV-06815 (E.D.N.Y.)

  f. *Joyner v. City of New York*, No. 16-CV-0041 (E.D.N.Y.)

  g. *McMillan v. City of New York*, No. 15-CV-07181 (E.D.N.Y.)

  h. *Negron v. City of New York*, No. 15-CV-07242 (E.D.N.Y.)

  i. *Smith v. City of New York*, No. 16-CV-00845 (E.D.N.Y.)

  j. *Springer v. City of New York*, No. 15-CV-06616 (E.D.N.Y.)

54. The Honorable Jack B. Weinstein of the Eastern District of New York has found that the NYPD had a de facto policy, custom, or practice of harassing private individuals with unlawful and false arrest and bringing meritless charges against innocent citizens:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

*Colon v. City of New York*, No. 09-CV-00008, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009).

55. The foregoing policy, custom, or practice of the City of New York constituted deliberate indifference to Plaintiff's safety, well-being, and constitutional rights, and were a direct and proximate cause of the constitutional violations that Plaintiff suffered as alleged herein.

56. As a result of the foregoing customs, policies, usages, practices, procedures, and rules, Plaintiff was intentionally blocked on the roadway and maliciously attacked by the

14

Sanitation Defendants and then unlawfully arrested, detained, prosecuted, and his vehicle unlawfully searched, by the Police Defendants.

57. In addition, Defendant City of New York engaged in a policy, custom, or practice of inadequate screening, hiring, retaining, training and supervising its employees, which caused the violation of Plaintiff's rights as described herein. Specifically, Defendant City of New York failed to train and/or supervise its employees:

   a. In the case of DSNY, to safely operate collection trucks on public roadways;

   b. In the case of the NYPD, to make arrests only where probable cause or a warrant so permits;

   c. In the case of the NYPD, to initiate prosecutions only where sufficient cause so permits; and

   d. In the case of the NYPD, to intervene when a fellow officer threatens to violate and/or does violate the rights of a resident of New York.

58. Through the failure of Defendant City of New York to properly recruit, screen, train, discipline, and supervise its employees, including the Police Defendants and the Sanitation Defendants, Defendant City of New York has tacitly authorized, ratified, and been deliberately indifferent to the acts and conduct complained of herein.

## SEVENTH CLAIM FOR RELIEF
### Article I, New York State Constitution

59. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 58 as if fully alleged herein.

60. The actions of the Police Defendants, acting under color of law, in subjecting Plaintiff to unlawful search and arrest, were done without lawful justification, and were designed to and did cause specific harm, pain and suffering to the Plaintiff in violation of his

15

Constitutional rights to equal protection as guaranteed by Article I, Section 11 and 12 of the Constitution of the State of New York.

61. The foregoing acts and conduct of the Police Defendants were a direct and proximate cause of injury and damage to the Plaintiff and violated his rights as guaranteed by the Constitution of the State of New York.

## EIGHTH CLAIM FOR RELIEF
**Assault and Battery**
**Against the Sanitation Defendants in Their Individual and Official Capacities**

62. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 61 as if fully alleged herein.

63. The Sanitation Defendants engaged in intentional physical conduct that put Plaintiff in imminent apprehension of harm, and made offensive and intentional bodily contact with Plaintiff without privilege or consent. As a result, Plaintiff suffered serious physical injuries to his knees, back, right hip, face, and head, as well as pain, mental anguish, shock, fright, and apprehension.

## NINTH CLAIM FOR RELIEF
**New York Civil Rights Law § 10**
**Against All Defendants**

64. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 63 as if fully alleged herein.

65. By their actions, the Police Defendants, Sanitation Defendants, and Defendant City of New York deprived Plaintiff of his right to justice administered without favor, violating his rights ensured under New York Civil Rights Law § 10, as distinct from the violations of Plaintiff's Constitutional rights detailed in the preceding claims.

## TENTH CLAIM FOR RELIEF
### *Respondeat Superior* Liability
### Against Defendant City of New York

66. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 65 as if fully alleged herein.

67. Defendant the City of New York is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

68. Defendant City of New York should have reasonably expected that its employees and agents would have engaged in this wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wesley Sommerville demands judgment against Defendants, jointly and severally, as follows:

1. For an order granting compensatory damages for all actual and direct losses and expenses Plaintiff has incurred and will incur as a result of Defendants' actions, the exact amount to be proven at trial, together with prejudgment interest and costs;

2. For an order granting punitive damages to punish Defendants' wrongful conduct and deter future wrongful conduct;

3. For an order granting Plaintiff's costs and disbursements of this action, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, costs and expenses; and

4. Such further relief as the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff Wesley Sommerville hereby demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

Dated:  October 17, 2016

        /s/ Michael D. Mann
_____
Michael D. Mann
Francesca E. Brody
Taylor L. Napolitano
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York  10019
Telephone:  212 839-5300
Facsimile:  212 839-5599

*Attorneys for Plaintiff Wesley Sommerville*